KOZLIK, by Guardian *ad litem*, Appellant, vs. STREIT, Respondent.*

*June 2—June 26, 1958.*

---

* Motion for rehearing denied, with $25 costs, on October 7, 1958.

512

514

For the appellant there were briefs by *Fisher & Fisher* and *Cleland P. Fisher,* all of Janesville, and oral argument by *Cleland P. Fisher.*

For the respondent there was a brief and oral argument by *Crosby H. Summers* of Janesville.

FAIRCHILD, J. The appellant claims that the evidence presented jury issues as to causal negligence on Streit's part as to speed, lookout, management and control, and position on the highway. The respondent asserts and the circuit court was of the opinion that the evidence provided no basis for a finding of negligence.

1. *Speed.* Streit was traveling at between 50 and 60 miles per hour at a place and time where the speed limit was 65 miles per hour. Plaintiff contends that because there was westbound traffic and one of the westbound vehicles was

moving at a very slow rate, a speed of 60 miles per hour, eastbound, was greater than "reasonable and prudent under conditions and having regard for the actual and potential hazards then existing." Sec. 85.40 (2) (a), Stats. (1955). Plaintiff argues that the presence of the slow-moving tractor created a hazard that a vehicle behind it would move suddenly into the eastbound lane. He relies upon the decision in *Metz v. Rath* (1957), 275 Wis. 12, 81 N. W. (2d) 34. There we held that negligence as to speed could be predicated upon the fact that the driver observed a truck loaded with tires parked across the highway from a public garage and that this condition should have brought to the driver's attention the possibility of a pedestrian traversing the space between the truck and the garage. We view the situations differently however. The slow-moving tractor had apparently been in the westbound line of vehicles for some distance. It was not an obstruction suddenly placed in their path and an eastbound driver, such as Streit, could assume that westbound drivers following the tractor would have their cars under sufficient control to remain behind it until it was safe to pass.

2. *Lookout.* Streit kept enough lookout to be conscious that westbound vehicles were approaching. Unless he had a duty to reduce his speed or take other action because one westbound vehicle was a slow-moving tractor, due care did not require that he be alert to the character of each vehicle in addition to its presence in the opposite lane of the highway. With respect to lookout ahead of him, there is no evidence that he failed to see the Kozlik car at the first moment that it invaded the south lane of the highway.

3. *Management and control.* After Kozlik appeared in Streit's lane, Streit took his foot off the gas pedal, applied his brakes hard enough so that he left marks on the pavement and on the shoulder, and turned onto the shoulder on the south side of the highway. He did not apply his emer-

gency brake nor sound his horn. Assuming that Kozlik turned into the south lane at the Larsen driveway 280 feet east of the point of collision; that he averaged only 50 miles per hour before applying his brakes hard enough to leave marks and averaged only 30 miles per hour during the period while his brakes were so applied, 4.9 seconds elapsed from the time when he first turned into the south lane to the time of the first impact. Assuming that Streit averaged 30 miles per hour during the period while his brakes were applied hard enough to leave marks, his brakes were so applied for 2.3 seconds and 2.6 seconds had elapsed between the time that Kozlik turned into the south lane and the time that Streit so applied his brakes. During this time he had appraised the situation, taken his foot off the gas pedal, and then commenced to apply his brakes. The assumptions upon which these computations are based are not necessarily accurate but the result is at least an approximation of the lapse of time involved. We consider that as a matter of law Kozlik's invasion of Streit's lane of travel presented an emergency to which no negligence on the part of Streit contributed. Streit made such a choice as a person of ordinary prudence might make in the emergency and the fact that he conceivably could have done something more or something different is not a sufficient basis for a finding of negligence as to management and control.

Plaintiff attempts to avoid the application of the emergency doctrine as a matter of law by relying upon Streit's statement immediately after the accident in which he referred to Kozlik's skidding toward him "a half mile up the road." Had Streit observed facts when Kozlik was a half mile away warning Streit that Kozlik's car was and might continue to be out of control, there might have been a jury question as to Streit's negligence in proceeding toward danger. *Laughnan v. Aetna Casualty & Surety Co.* (1957), 1 Wis. (2d)

113, 120, 83 N. W. (2d) 747; *Auster v. Zaspel* (1955), 270 Wis. 368, 372, 71 N. W. (2d) 417. Streit's reference to "a half mile up the road" is contradicted by all the other evidence offered by plaintiff. The otherwise undisputed evidence produced by plaintiff was that the invasion first took place approximately 280 feet from the point of collision. The use of the term "half mile" was clearly a gross exaggeration such as might well be made under the circumstances of the conversation and cannot suffice as a basis for a jury finding that Streit had warning of danger prior to Kozlik's reaching the Larsen driveway.

4. *Position on the highway.* Plaintiff contends that Streit had no right to operate his automobile on the right-hand shoulder and that the collision would not have occurred had Streit remained upon the pavement. This contention is disposed of by what we have said with respect to the application of the emergency doctrine as a matter of law.

As pointed out upon argument by his counsel, the little boy who is the innocent victim in this case will, presumably, never be compensated from any source for his serious injuries. His tragic misfortune supplies an argument for a method under which compensation for injury arising out of operation of an automobile, regardless of actionable negligence, would be afforded at the expense of the motoring public. The establishment of such a system however would have to be a choice of the legislature, for the court cannot find a driver negligent solely because an injured person will otherwise go without compensation.

*By the Court.*—Judgment affirmed.